(No. 6953.   January 31, 1942)

JOHN A. PERRY and BONDHOLDERS BUREAU, INC., a corporation, Respondents, v. D. O. REYNOLDS and LAURA REYNOLDS, husband and wife, Appellants.

(122 Pac. (2d) 508)

Rehearing denied March 9, 1942

James & James and Frank Croner, for Appellants.

Charles Scoggin and Fred M. Taylor, for Respondents.

AILSHIE, J.—This action was commenced, praying for an injunction against appellants, restraining and enjoining them from interfering with respondents' ditch across appellants' lands, and enjoining them from disturbing or interfering with respondents using the ditch, conveying water through the same, and for $1,000 damages.

The respondents claimed to be the owners of "The NE¼ SE¼, NE¼, and the W½ of Sec. 26, Twp. 1, S. Rge. 14 E.B.M.," comprising 520 acres. The appellants are the owners of the adjoining lands (580 acres), described as follows: "The NE¼ of Sec. 22; the SE¼ and the NW¼ of Sec. 15; and the N½ NE¼, Sec. 16, all in Twp. 1 S. Rge. 14 E.B.M." These lands are all arid, agricultural lands and require artificial application of water for the growing of crops. A ditch or canal was constructed diagonally across these lands for conveyance of irrigating water in 1887; and water was thereafter carried through the canal to respondents' land.

Respondent, Bondholders Bureau, Inc., acquired its title to the land by deed dated March 10, 1936. Respondent Perry had the land claimed by respondents under lease and was in possession of the same in 1933, '34, and '35, and contracted to purchase it from the Bondholders Bureau, Inc., in 1936. In 1937 appellants plowed in the ditch, claiming that respondents had abandoned and forfeited their right to use the same.

The original complaint was filed February 20, 1940, and thereafter, on March 18, 1940, an amended complaint was filed and served, and the case was tried on the issues therein presented. The case was tried to the court and special interrogatories were submitted to a jury. The findings of the jury were adopted by the court and a decree was entered in favor of respondents against ap-

pellants, granting the injunction prayed for and awarding $150 damages.

John A. Perry and Bondholders Bureau, Inc. are joined as *plaintiffs* and all the allegations of the complaint are made by plaintiffs (plural). The only specific reference in the complaint, to the character and capacity of plaintiff, Bondholders Bureau, Inc., is as follows:

"That the plaintiff Bondholders Bureau, Inc., at all times herein mentioned, was, and now is, a corporation organized and existing under and by virtue of the laws of the State of Colorado, and authorized to do and engage in doing business in the State of Idaho."

Appellants urge that the evidence fails to show that the Bondholders Bureau, Inc., had complied with the constitution (sec. 10, art. 11) and statutes (sec. 29-501, 29-504, and 29-505, I. C. A.) of this state, so as to entitle it to do business in Idaho; and for that reason, it was error for the court to enter findings and decree in favor of the respondents. It is true that there is no proof that the corporation fully complied with the constitution and statutes, in the matter of filing copy of its articles of incorporation and designation of its principal place of business and statutory agent. But no issue was raised by either demurrer or answer as to the capacity of the corporation to either take title to property or transact business in the state. It is contended, however, that the fact that defendants denied the allegation of the complaint above set out (Par. 1-A) is sufficient to raise the issue and render it incumbent on the plaintiffs to prove the corporation's compliance with the constitution and statute. This would be true, had it been alleged that the company was actually engaged "in doing business" in this state, but such is not the allegation. The allegation is rather that the corporation *"was .... authorized to do and engage in doing business in the State of Idaho."*

Here there is no showing by either pleading or proof, that the Bondholders Bureau, Inc., was "doing business in this state." It appears that the Bondholders Bureau, Inc., was a Colorado corporation; that it maintained its principal place of business in Minneapolis,

Minn.; and that the contract of sale (Exhibit "O") was executed in Minnesota and was to be performed there. In other words, the payments provided for were to be made in that state. The real estate covered by the contract was situated in Idaho and, upon completion of payments, the deed was to be executed and delivered. The *deed to the corporation* was also executed in Minnesota. This does not constitute "doing business in this state," within the purview and meaning of sec. 10 of art. 11 of the constitution.

■■■ A single isolated transaction does not constitute "doing business." (*Adjustment Bureau, etc., v. Conley,* 44 Idaho 148, 152, 255 Pac. 414; *Portland C. L. Co.. v. Hansen L. & F. Co.,* 43 Idaho 343, 353, 251 Pac. 1051.)

Furthermore, this is not an action on contract; it is rather a possessory action to prevent a trespass. The contract of sale *between the respondents* is not in issue between them in this case.

In *Bettilyon Home Builders Co. v. Philbrick and Greenwood,* 31 Idaho 724, 728, 175 Pac. 958, this court cited and quoted with approval from *Bonham Natl. Bank v. Grimes Pass P. M. Co.,* 18 Idaho 629, 111 Pac. 1078, and thereupon concluded as follows:

"A fair construction of the statute leads to the conclusion that a contract or agreement which cannot be sued upon or enforced in any court of this state, under the prohibition of the statute quoted above, is one growing out of the 'doing of business in this state,' or so connected therewith as to be an element of such transaction. When the contract or agreement sued upon proves to be one which was made and performed outside of this state, the question as to whether the foreign corporation was doing business within the state is not material."

To the same effect, see *Foore v. Simon Piano Co.,* 18 Idaho 167, 108 Pac. 1038; *Diamond Bank v. Van Meter,* 19 Idaho 225, 113 Pac. 97; *Hoffstater v. Jewell,* 33 Idaho 439, 196 Pac. 194; *Largilliere Co. v. McConkie,* 36 Idaho 229, 210 Pac. 207; *Bombach v. Sargent Land Co.,* 242 U. S. 503, 61 L. ed. 460.

A number of assignments of error are made against the sufficiency of the evidence to support the findings and judgment. These specifications are covered by answers to

special interrogatories submitted by the court to a jury. The answers to these interrogatories are all adverse to the contentions of the appellants and were approved and adopted by the court, as special findings on the issues so submitted. They are as follows:

## "INTERROGATORY NO. 1.

"Did the plaintiffs or their predecessors in interest during any five consecutive years divert from Soldier Creek during the irrigation season by means of the headgate and ditch claimed by them and conduct through said ditch and beneficially use any of the waters of Soldier Creek? Answer: Yes.

## INTERROGATORY NO. 2.

"Did the plaintiffs prior to the commencement of this suit abandon or forsake said ditch across defendant's land? Answer: No.

## INTERROGATORY NO. 3.

"Did the plaintiffs or either of them during the five year period prior to the commencement of this suit divert from Soldier Creek during the irrigation season by means of the headgate and ditch claimed by them and conduct through said ditch and use upon their said lands any of the waters of Soldier Creek? In this connection you are instructed that this action was commenced on the 20th day of February, 1940. Answer: Yes.

## INTERROGATORY NO. 4.

"Did the plaintiffs or either of them during the five year period prior to the plowing in of the ditch on defendant's land in October of 1937, divert from Soldier Creek during the irrigation season by means of this ditch claimed by them and conduct through said ditch and use upon their said lands any of the waters of Soldier Creek? Answer: Yes.

## INTERROGATORY NO. 5

"In what year did the plaintiffs or their predecessors in interest last divert from Soldier Creek during the irrigation season by means of their headgate and ditch and conduct through said ditch to said land, the waters of Soldier Creek? Answer: 1937.

## INTERROGATORY NO. 6.

"What damages, if any, were sustained by the plaintiffs as a direct result of defendant's plowing in of the ditch on defendant's premises since October, 1937? Answer: $150.00."

There is evidence in the record supporting the conclusions reached by the jury on these special interrogatories. It is true that the evidence is not very satisfactory as to just when it was, or how long it had been, since respondents conveyed water to their land through the ditch over the lands of appellants. There is, however, some substantial evidence that they had done so within the period of the statute of limitations. As bearing on the latter statement, it must be remembered that it requires very convincing and satisfactory proofs to support a forfeiture by abandonment of a real property right. (*Welch v. Garrett*, 5 Idaho 639, 51 Pac. 405, followed and approved in *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.*, 5 Idaho 793, 799, 51 Pac. 990.)

"Abandonment may be shown by the facts and circumstances, but clear proof is required to make out a case." (*Union Grain & E. Co. v. McCammon Ditch Co.*, 41 Idaho 216, 224, 240 Pac. 443.)

"It is elementary that an abandonment of any right is dependent upon an intention to abandon and must be evidenced by a clear, unequivocal and decisive act of the party." (*Sullivan C. Co. v. Twin Falls A. Co.*, 44 Idaho 520, 526, 258 Pac. 529.)

"Abandonment is a matter of intent, coupled with corresponding conduct; thus a question of fact." (*St. John Irr. Co. v. Danforth,* 50 Idaho 513, 516, 298 Pac. 365.) See, also, *Zezi v. Lightfoot,* 57 Idaho 707, 713, 68 Pac. 2d 50.

It is also contended that the findings and decree in this case contain no sufficient or adequate description of the easement claimed. The description contained in the decree, in so far as it affects the canal easement through appellants' land, is as follows:

"That the plaintiffs are and they are hereby decreed to

be the owners of that certain ditch, and rights of way thereof, now situate on defendants land situate in Camas County, State of Idaho, described as the NE¼ of Section 22; the NW¼ and the SE¼ of Section 15; all in Township One South, Range 14 East of the Boise Meridian, which said ditches and rights of way therefor are more particularly described in paragraphs six and seven of the Findings of Fact herein which is as follows:

"Beginning at the point of diversion located on said Soldier Creek approximately 150 feet west and 67 feet north of the southeast corner of the NW¼ NW¼ of Sec. 15, Twp. 1 S., Rge. 14 E. B. M.,

"Thence in a general southeasterly direction to a point on the north boundary line of the NE¼ SW¼ of said Section 15, which point is approximately 450 feet west of the NE corner of said NE¼ SW¼."

The trouble with the foregoing description is that the points from which measurements are to be made are only "approximately." (*Ross v. Keaton T. & R. Co.,* 57 Cal. App. 50, 206 Pac. 645.) It is not definite as to either the point from which the measurement commences nor does it specify any monument or object from which the measurement can be taken; nor is it certain or definite as to *direction.* "Southeasterly" may be anywhere within an arc of 90 degrees. (*Sime v. Spencer,* 30 Ore. 340, 47 Pac. 919-20.) An officer not otherwise informed, except by the foregoing description, in writ of ouster or an execution, would not know just what particular strip or piece of land was to be identified, unless he obtained his information from some source *outside the writ and the record.*

Furthermore, a canal is something more than merely a line. It should be described, at least, as to width and also as to the extent of the right of way or *easement along the canal for travel and use in maintenance and upkeep of the canal.* None of these things are contained in this description.

We have heretofore had occasion to consider the importance of properly describing real property in judgments and decrees, affecting the title and right of possession to the same. In *Hedrick v. Lee,* 39 Idaho 42, 227 Pac. 27, this court said:

"A judgment involving the right to possession of real property must sufficiently describe it to enable an officer charged with the duty of executing a writ of possession to go upon the ground, and, without exercising judicial functions, ascertain the locality of the lines as fixed by the judgment."

The same rule was followed in *Hall v. Taylor,* 57 Idaho 662, 668, 67 Pac. 2d 901, wherein the court said:

"The decree is also too indefinite and uncertain as to the extent and character of *easement* awarded to the respondent for the purpose of maintaining and protecting such water right as he has acquired. The extent of the right of way or easement necessary for respondent to protect and enjoy the water right he has acquired, should be definitely and certainly fixed and described in the decree (as to location, length and width) in order that conflicts between land owners may be avoided."

To same effect, see, also *Norrie v. Fleming,* 62 Idaho 381, 112 Pac. 2d 482.

Exception is taken to the finding of the court awarding $150 damages, on the ground that it is "not based upon any competent evidence for determining the measure of damages in such case." No objection was made upon the trial on the ground that the proofs offered were not based upon the proper measure of damages; and no assignment is made here of error having been committed in the admission or rejection of testimony as to the amount or character of the damages. It is true that the evidence is meager, but there is some evidence supporting the special finding of the jury for $150 damages.

We conclude that the judgment should be affirmed except as to the description of the ditch and easement, against disturbance of which the decree of injunction is to run.

The case will therefore be remanded to the trial court, with direction to make more definite and certain the finding and decree describing the ditch, location, right of way and easement which is to be protected by the injunction. If it is deemed necessary, the court will hear further testimony as to the location and description of

the property. It may be observed,—in response to certain statements made on oral argument,—that survey by a licensed surveyor and field notes are not essential, since anyone might make the measurements from a definitely established corner or monument, and so determine, measure and mark the boundaries of the ditch and easement involved.

The judgment is affirmed except as above indicated and, for that purpose, the cause is remanded for further proceedings.

Costs to be equally divided.

Givens, C.J., Budge, Morgan, and Holden, JJ., concur.